IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CHARLOTTE ALLEN; ELIZABETH BEUTLER;   ]
and LORRAINE ROWE,                    ]
                                      ]
                Plaintiffs,           ]
                                      ]
        -vs-                          ]  Civil No.
                                      ]
PFIZER, INC.; PHARMACIA CORPORATION;  ]  **JURY TRIAL DEMANDED**
and G.D. SEARLE LLC                   ]
(FKA G.D. SEARLE & CO.),              ]
                                      ]
                Defendants.           ]
_____ ]

## COMPLAINT

Mark B. Hutton
Lead Counsel
KS Bar #10112
Elizabeth L. Dudley
KS Bar #21582
HUTTON & HUTTON LAW FIRM, L.L.C.
8100 East 22nd Street North, Bldg. 1200
P.O. Box 638
Wichita, Kansas 67201-0638
Telephone: (316) 688-1166
Facsimile: (316) 686-1077
Trial.Lawyers@huttonlaw.com

*Attorneys for Plaintiffs*

Martha K. Wivell, Esq
MN Bar #128090
Attorney at Law
Box 339
Cook, MN 55723
Telephone: (218) 666-0250
MWivell@MSN.com

*Attorneys for Plaintiffs and Local Counsel*

Dated: ___11/20_____, 2007

## Table of Contents

I.  INTRODUCTION .................................................................. 4

II. THE PARTIES...................................................................... 5

    A.  The Individual Plaintiffs ................................................ 5

    B.  The Defendants PFIZER, INC.; PHARMACIA
        CORPORATION; and G.D. SEARLE LLC
        (FKA G.D. SEARLE & CO.) ........................................ 5

III. JURISDICTION AND VENUE ........................................... 7

IV. FACTS COMMON TO ALL PLAINTIFFS ........................ 8

V.  INDIVIDUAL PLAINTIFF'S STATEMENT OF FACTS........................... 11

    A.  Plaintiff Charlotte Allen................................................ 11

    B.  Plaintiff Elizabeth Beutler............................................ 12

    C.  Plaintiff Lorraine Rowe .............................................. 13

VI. CLAIMS FOR RELIEF ..................................................... 14

    A.  Count I:  Strict Liability............................................... 14

    B.  Count II:  Breach of Implied Warranty
        of Merchantability...................................................... 15

    C.  Count III:  Breach of Implied Warranty of
        Fitness for a Particular Purpose ................................... 16

    D.  Count IV:  Breach of Express Warranty ....................... 17

    E.  Count V:  Negligence.................................................. 19

VII. DEMAND FOR JUDGMENT AGAINST DEFENDANTS
     PFIZER, INC.; PHARMACIA CORPORATION; and
     G.D. SEARLE LLC (FKA G.D. SEARLE & CO.)......................................... 21

VIII. DEMAND FOR JURY TRIAL ........................................... 21

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

**COMPLAINT**

Plaintiffs, for their Complaint against Defendants, allege as follows:

## I.    INTRODUCTION.

1.      This is a civil action seeking damages for personal injuries. The Plaintiffs assert product liability **claims** against Defendants PFIZER, INC., PHARMACIA CORPORATION; and G.D. SEARLE LLC (FKA G.D. SEARLE & CO.) (hereinafter referred to as "the PFIZER ENTITIES") arising from the design, manufacture, and sale of a drug known as Bextra ("BEXTRA"). It is alleged by the Plaintiffs that BEXTRA was a defective and unreasonably dangerous product that caused their damages.

2.      It is anticipated that these actions will be subject to transfer and consolidation for pretrial proceedings pursuant to 28 U.S.C.A. §1407 in the United States District Court for the District of Minnesota. See In Re: *Bextra and Celebrex Product Liability Litigation,* MDL 1699 (J.P.M.D.L., *filed* Sept. 6, 2005) (transfer order, attached as Exhibit "A"). Plaintiffs join their individual and several claims against Defendants into this one lawsuit because their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and questions of law and fact common to all Plaintiffs will arise in this action. FED. R. CIV. P. 20(a). Joinder of these parties and claims for transfer and pretrial proceedings would work to "secure the just, speedy, and inexpensive determination of [this] action." FED. R. CIV. P. 1. Therefore, Plaintiffs have joined their claims in this Complaint.

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

## II.    THE PARTIES.

### A.    The Individual Plaintiffs.

3.    Plaintiff, **CHARLOTTE ALLEN**, is an adult individual residing in Kansas.

4.    Plaintiff, **ELIZABETH BEUTLER**, is an adult individual residing in Kansas.

5.    Plaintiff, **LORRAINE ROWE**, is an adult individual residing in Oklahoma.

### B.    The Defendants PFIZER, INC.; PHARMACIA CORPORATION; and G.D. SEARLE LLC (FKA G.D. SEARLE & CO.).

6.    Defendant **PFIZER, INC.**, is a foreign, for-profit corporation. PFIZER, INC. is incorporated in Delaware and has its principal place of business in New York, New York. At all times material, PFIZER, INC. was and is in good standing and actively doing business in the State of Minnesota. On July 16, 2002, PFIZER, INC. announced its proposed acquisition of PHARMACIA CORPORATION ("PHARMACIA"). On April 16, 2003, PFIZER, INC. completed its $60 billion acquisition of PHARMACIA. As a wholly-owned subsidiary of PFIZER, INC., PHARMACIA acted in all aspects as PFIZER's agent and alter ego. At all relevant times, PFIZER, INC. and/or its predecessors-in-interest were engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting and selling the drug Valdecoxib under the trade name BEXTRA in Minnesota and throughout the United States.

7.    Defendant **G.D. SEARLE LLC (FKA G.D. SEARLE & CO.)** ("SEARLE") is a Delaware corporation with its principal place of business in Illinois. In

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

April 2000, SEARLE was acquired by PHARMACIA and became a wholly-owned subsidiary of PHARMACIA.    At the time of PFIZER, INC.'s acquisition of PHARMACIA, SEARLE was a wholly-owned subsidiary of PHARMACIA, acting as its agent and alter ego in all matters alleged in this Complaint, and is now a wholly-owned subsidiary of PFIZER, INC. At all relevant times, SEARLE has been engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting and selling the drug Valdecoxib under the trade name BEXTRA in Minnesota and throughout the United States.

8.    Defendant **PHARMACIA CORPORATION** is a Delaware corporation with its principal place of business in New Jersey.  PHARMACIA was created in April 2000 through the merger of Pharmacia & Upjohn with Monsanto Company and its G.D. SEARLE unit.  PHARMACIA is now a wholly-owned subsidiary of PFIZER, INC..  At all relevant times, PHARMACIA, and its predecessors-in-interest have been engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting and selling the drug Valdecoxib under the trade name BEXTRA in Minnesota and throughout the United States.

9.    Valdecoxib was developed in 1998 by SEARLE and marketed jointly by SEARLE and PFIZER, INC. under the brand name BEXTRA.  SEARLE was acquired by PHARMACIA, which was then acquired by PFIZER, INC., in part so that PFIZER, INC. could take full control of BEXTRA.

10.    At all times relevant to this action, Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted and misrepresented the risks, dangers, defects and disadvantages of BEXTRA, and advertised, promoted, marketed, sold and

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Page 5 of 21

distributed BEXTRA as a safe prescription medication when, in fact, Defendants had reason to know, and did know, that BEXTRA was not safe for its intended purposes, for the patients for whom it was prescribed and for whom it was sold and that BEXTRA caused serious medical problems, and in certain patients, catastrophic injuries and deaths.

11.    In engaging in the conduct alleged herein, each Defendant acted as the agent for each of the other Defendants, or those Defendant's predecessors in interest.

### III.    JURISDICTION AND VENUE.

12.    This Court has subject matter jurisdiction under 28 U.S.C.A. §1332 (diversity jurisdiction).  Plaintiffs and PFIZER are citizens of different states and the amount in controversy exceeds $75,000.00.

13.    This Court has personal jurisdiction over PFIZER who, at all times material, was and is licensed and registered to do business in Minnesota.  PFIZER, INC. maintains a registered agent for the service of process in Minnesota:  CT Corporation System, Inc., 405 2nd Avenue South, Minneapolis, MN 55401.  Plaintiffs, by bringing this action, submit to this Court's personal jurisdiction.

14.    As this is a case is based upon diversity jurisdiction, this Court applies the forum state's choice-of-law rules.  *Glover v. Merck & Co., Inc.*, 345 F.Supp.2d 994, 997 (D. Minn. 2004).  Therefore, Minnesota choice-of-law principles apply here.  *Id.*

15.    As it relates to statutes of limitation, the traditional rule in Minnesota is that such statutes are procedural and governed by the law of the forum.  *Id.*

16.    Venue is proper in this District pursuant to 28 U.S.C.A. §1391.  PFIZER marketed, advertised and distributed the dangerous product in this district, thereby receiving substantial financial benefit and profits from sales of the dangerous product in

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Page 6 of 21

this district and reside in this district under 28 U.S.C.A. §1391(c), such that venue is proper.

17.    At all relevant times herein, PFIZER was in the business of designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing, warranting and selling their product, BEXTRA.   PFIZER at all times relevant hereto designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate commerce (including Minnesota) the aforementioned prescription drug.   PFIZER does substantial business in the State of Minnesota and within this District, advertises in this district, receives substantial compensation and profits from sales of BEXTRA in this District, and made material omissions and misrepresentations and breaches of warranties in this District so as to subject them to *in personam* jurisdiction in this District.   In engaging in the conduct herein, each Defendant acted as the agent for each of the other Defendants or those Defendants' predecessors-in-interest.

IV.    **FACTS COMMON TO ALL PLAINTIFFS.**

18.    There are a group of medications or drugs known as "non-steroidal anti-inflammatory drugs" or "NSAIDs."   These *medications* are designed to relieve pain, inflammation and swelling.   Common NSAIDs include aspirin and ibuprofen.   While aspirin and ibuprofen are effective NSAIDs, they do cause some people to experience gastrointestinal complications.

19.    In the last ten to fifteen years, a new generation of NSAIDs known as "COX-2 inhibitors" have been introduced to provide relief from pain, inflammation and swelling without gastrointestinal complications.   A COX-2 inhibitor minimizes the

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Page 7 of 21

effects of the COX-2 enzyme, while not interfering with the COX-1 enzyme which helps to protect the stomach's lining, gastrointestinal tract and kidney functions.

20.    In 1999, a drug known as "Celebrex," that was originally developed by G.D. SEARLE, was approved by the U.S. Food and Drug Administration ("FDA") as the first COX-2 inhibitor. Shortly thereafter, PHARMACIA acquired G.D. SEARLE through its merger with the Monsanto Company.

21.    By the end of 2000, PHARMACIA had submitted "parecoxib sodium," another COX-2 inhibitor, for FDA approval for acute pain management. Parecoxib sodium is a "pro-drug" for "valdecoxib." A pro-drug is a drug which is rapidly converted in the body to the active form, which, in the case of parecoxib sodium, is valdecoxib. During studies, parecoxib sodium was associated with a cluster of cardiovascular events and was rejected by the FDA in 2001.

22.    Thereafter, PHARMACIA submitted another COX-2 inhibitor, named "BEXTRA," which was Valdecoxib, to the FDA for approval.

23.    The testing data provided by PHARMACIA was inadequate to disclose the dangerous properties of BEXTRA. If PHARMACIA had conducted adequate testing prior to FDA approval, rather than the short-duration studies on small patient groups, PHARMACIA's data would have revealed significant increases in incidence of strokes and myocardial infarctions among the intended and targeted population of BEXTRA consumers. Adequate testing would have shown that BEXTRA possessed serious side effects for individuals such as the Plaintiffs. PFIZER, and its predecessors, should have taken appropriate measures to ensure that their defectively designed product would not be placed in the stream of commerce and/or should have provided full and proper warnings

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

24.     PFIZER, and its predecessors, intentionally withheld information, suppressed data, and limited studies to conceal the hazardous nature of COX-2 inhibitors and BEXTRA to obtain FDA approval and market their product to the public. PFIZER and its predecessors knew, from their experience with parecoxib sodium, the pre-drug to Valdecoxib or BEXTRA, that substantial evidence of adverse cardiovascular events would complicate or bar FDA approval. Therefore, PFIZER and its predecessors intentionally manipulated the testing and data to conceal these adverse events associated with Valdecoxib or BEXTRA.

25.     The FDA approved BEXTRA to treat the joint pain of osteoarthritis and adult rheumatoid arthritis on November 16, 2001. Since its introduction to the market, BEXTRA has been prescribed for people suffering from osteoarthritis, adult rheumatoid arthritis and menstrual cramping.

26.     PFIZER acquired PHARMACIA on April 16, 2003, and is the successor-in-interest to PHARMACIA and G.D. SEARLE.

27.     The use of BEXTRA grew rapidly with sales exceeding $900 million in 2003.

28.     Later in November, 2004, PFIZER added a new warning to the BEXTRA label cautioning doctors that BEXTRA was associated with increased risk of thromboembolic events such as attack, stroke, pulmonary embolism or deep vein thrombosis immediately following cardiac artery bypass graph ("CABG") surgery. The warning stated:

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

1  Patients treated with BEXTRA for pain following coronary artery
   bypass graft surgery have a higher risk for
2  cardiovascular/thromboembolic events, deep surgical infections or
   sternal wound complications. BEXTRA is therefore contraindicated for
   the treatment of postoperative pain following CABG surgery.
3
   BEXTRA is contraindicated for the treatment of post-operative pain
4  immediately following coronary artery bypass graft surgery and should
   not be used in this setting.

5       29.    PFIZER limited the warning to patients who underwent CABG surgery.

6  There was no warning associated with the use of BEXTRA for the treatment of

7  osteoarthritis, adult rheumatoid arthritis and menstrual cramping.

8       30.    On April 7, 2005, the FDA finally insisted that PFIZER "voluntarily

9  withdraw" BEXTRA from the U.S. market, stating:

10      [T]he overall risk versus benefit profile of BEXTRA is unfavorable.
        This conclusion is based on the potential increased risk for serious
11      cardiovascular (CV) adverse events, which appears to be a class effect of
        non-steroidal anti-inflammatory drugs (NSAIDs) (excluding aspirin), an
12      increased risk of serious skin reactions (e.g. toxic epidermal necrolysis,
        Stevens-Johnson syndrome, erythema multiforme) compared to other
13      NSAIDs, and the fact that BEXTRA has not been shown to offer any
        unique advantage over the other available NSAIDs.
14

15  FDA ALERT FOR HEALTHCARE PROFESSIONALS (April 7, 2005).

16  V.     INDIVIDUAL PLAINTIFF'S STATEMENT OF FACTS.

17      A.     PLAINTIFF CHARLOTTE ALLEN:

18      31.    Ms. Allen was prescribed BEXTRA on April 30, 2003. She took it

19  daily and was still taking it on December 14, 2003, a period in excess of seven months, at

20  which time she was admitted to the hospital complaining of severe chest discomfort. Ms.

21  Allen was diagnosed with an anterior myocardial infarction [heart attack]. BEXTRA

22  caused or contributed to cause the heart attack which she suffered on December 14, 2003,

23  along with other injuries and damages.

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

32.    Ms. Allen and her healthcare providers were, at the time of her injuries, unaware and could not have reasonably known or have learned through reasonable diligence that such injuries directly resulted from Plaintiff's ingestion of BEXTRA. Plaintiff and her healthcare providers never knew of the significant increased risks of a heart attack caused by BEXTRA until various information was released sometime thereafter.

33.    As a result of PFIZER's wrongful acts, Ms. Allen suffered severe and permanent personal injuries as described above due to her prescribed consumption of BEXTRA. As a result of the severe and permanent personal injuries as described above, Ms. Allen incurred and will continue to incur damages, including but not limited to, medical expenses and other economic losses. Additionally, Ms. Allen has endured and will continue to endure pain, suffering, disability, mental anguish and disfigurement, causing additional damages. These damages exceed $75,000.00.

**B.     PLAINTIFF ELIZABETH BEUTLER:**

34.    Plaintiff ELIZABETH BEUTLER was prescribed BEXTRA on August 22, 2003. She took it daily and was still taking it on January 12, 2004, a period in excess of four months, at which time she was admitted to the hospital complaining of chest pain. Ms. Beutler was diagnosed with an acute myocardial infarction [heart attack]. BEXTRA caused or contributed to cause the heart attack which she suffered on January 12, 2004, along with other injuries and damages.

35.    Unaware of the risks presented by BEXTRA, or that BEXTRA was the cause of her injuries, Ms. Beutler continued to take BEXTRA until February 9, 2005. Ms. Beutler and her healthcare providers were, at the time of her injuries, unaware and

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Page 11 of 21

could not have reasonably known or have learned through reasonable diligence that such injuries directly resulted from Plaintiff's ingestion of BEXTRA.  Plaintiff and her healthcare providers never knew of the significant increased risks of a heart attack caused by BEXTRA until various information was released sometime thereafter.

36.    As a result of PFIZER's wrongful acts, Ms. Allen suffered severe and permanent personal injuries as described above due to her prescribed consumption of BEXTRA.  As a result of the severe and permanent personal injuries as described above, Ms. Allen incurred and will continue to incur damages, including but not limited to, medical expenses and other economic losses.  Additionally, Ms. Allen has endured and will continue to endure pain, suffering, disability, mental anguish and disfigurement, causing additional damages.  These damages exceed $75,000.00.

C.    **PLAINTIFF LORRAINE ROWE:**

37.    Plaintiff LORRAINE ROWE was prescribed BEXTRA on September 13, 2002.  She took it daily and was still taking it on January 28, 2004, a period of sixteen months, at which time she was admitted to the hospital complaining of acute double vision, dysarthria and weakness.  Ms. Rowe was diagnosed with an acute thrombotic ischemic cerebrovascular accident [CVA].  BEXTRA caused or contributed to cause the CVA which she suffered on January 28, 2004, along with other injuries and damages.

38.    Unaware of the risks presented by BEXTRA, or that BEXTRA was the cause of her injuries, Mr. Rowe continued to take BEXTRA until November 3, 2004.  Ms. Rowe and her healthcare providers were, at the time of her injuries, unaware and could not have reasonably known or have learned through reasonable diligence that such injuries directly resulted from Plaintiff's ingestion of BEXTRA.  Plaintiff and her

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Page 12 of 21

healthcare providers never knew of the significant increased risks of a CVA caused by BEXTRA until various information was released sometime thereafter.

39.    As a result of PFIZER's wrongful acts, Ms. Rowe suffered severe and permanent personal injuries as described above due to her prescribed consumption of BEXTRA. As a result of the severe and permanent personal injuries as described above, Ms. Rowe incurred and will continue to incur damages, including but not limited to, medical expenses and other economic losses. Additionally, Ms. Rowe has endured and will continue to endure pain, suffering, disability, mental anguish and disfigurement, causing additional damages. These damages exceed $75,000.00.

## VI.    CLAIMS FOR RELIEF.

### A.    Count I: Strict Liability.

40.    Plaintiffs adopt by reference Paragraphs 1 through 39.

41.    PFIZER and its predecessors-in-interest were engaged in the business of researching, designing, producing, manufacturing, testing, inspecting, packaging, advertising, promoting, selling and distributing drugs and pharmaceutical products, particularly including BEXTRA as described above.

42.    BEXTRA was and is defective and unreasonably dangerous to persons, like Plaintiffs herein, who might be expected to use the products. BEXTRA was in a defective condition because it was unsafe for normal or anticipated handling and consumption. BEXTRA was unreasonably dangerous as the product was dangerous to an extent beyond that which would be contemplated by the ordinary consumer, like Plaintiffs herein, who purchased it and used it, with the ordinary knowledge common to the community as to its characteristics. BEXTRA was also unreasonably dangerous

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Page 13 of 21

because the drug, due to its dangerous condition, would not be put on the market by a reasonably prudent manufacturer or seller assuming they knew of its dangerous condition.    BEXTRA was defective and unreasonably dangerous in design, manufacturing, instructions and warnings.

43.    BEXTRA was defective and unreasonably dangerous at the time the product left PFIZER's control.

44.    BEXTRA was expected to reach and did reach Plaintiffs without substantial change in the condition in which the products were manufactured and sold.

45.    The defects in BEXTRA and PFIZER's other wrongful acts caused or contributed to cause Plaintiffs' injuries and damages as set forth above.

46.    WHEREFORE, Plaintiffs individually demand and pray for judgment against PFIZER in an amount exceeding $75,000.00 with such other and further relief as the Court may deem just and equitable.

**B.    Count II:  Breach of Implied Warranty of Merchantability.**

47.    Plaintiffs adopt by reference Paragraphs 1 through 46.

48.    PFIZER and its predecessors are merchants as to its drugs and pharmaceutical products, particularly including BEXTRA described above.    BEXTRA and other drugs and pharmaceutical products are goods.

49.    PFIZER as a merchant impliedly warranted the merchantability of its drugs and pharmaceutical products, including BEXTRA.

50.    BEXTRA was not merchantable as impliedly warranted.  Specifically, but not exclusively, BEXTRA was not fit for the ordinary purposes for which it was used because: (1) it caused increased risk of serious cardiovascular and cerebrovascular

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Page 14 of 21

adverse events, including heart attacks, strokes and other serious and harmful adverse health effects, and (2) was not effective in decreasing gastrointestinal side effects.

51.    Plaintiffs, as consumers of BEXTRA, were reasonably expected to use, consume and/or be affected by BEXTRA.

52.    PFIZER's breach of warranty and other wrongful acts caused or contributed to cause Plaintiffs' injuries and damages as set forth above.

53.    WHEREFORE, Plaintiffs individually demand and pray for judgment against PFIZER in an amount exceeding $75,000.00 with such other and further relief as the Court may deem just and equitable.

### C.    Count III:  Breach of Implied Warranty of Fitness for a Particular Purpose.

54.    Plaintiffs adopt by reference Paragraphs 1 through 53.

55.    PFIZER and its predecessors, as merchants and sellers of drugs and pharmaceutical products, including BEXTRA as described above, knew or had reason to know of the particular purpose for which its goods were used.

56.    The buyer of BEXTRA relied upon PFIZER's skill and judgment to select and furnish suitable products and goods.

57.    As a result, an implied warranty of fitness for a particular purpose existed as to BEXTRA.

58.    BEXTRA was not fit for its particular purpose because: (1) it caused increased risk of serious cardiovascular and cerebrovascular adverse events, including heart attacks, strokes, and other serious and harmful adverse health effects, and (2) was not effective in decreasing gastrointestinal side effects.

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

59.    BEXTRA was not fit for its particular purpose as impliedly warranted causing PFIZER to breach its implied warranty.

60.    Plaintiffs, as consumers of BEXTRA, were reasonably expected to use, consume and/or be affected by BEXTRA.

61.    PFIZER's breach of warranty and other wrongful acts caused or contributed to cause Plaintiffs' injuries and damages as set forth above.

62.    WHEREFORE, Plaintiffs individually demand and pray for judgment against PFIZER in an amount exceeding $75,000.00 with such other and further relief as the Court may deem just and equitable.

**D.    Count IV: Breach of Express Warranty.**

63.    Plaintiffs adopt by reference Paragraphs 1 through 62.

64.    PFIZER expressly represented to Plaintiffs and other consumers and the medical community that BEXTRA was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, particularly any unwarned-of side effects and that it was adequately tested.

1)    These warranties came in the form of:

a.    PFIZER's public written and verbal assurances of the safety and efficacy of BEXTRA;

b.    Press releases, interviews and dissemination via the media of promotional information, the sole purpose of which was to create an increased demand for BEXTRA, which failed to warn of the risk of injuries inherent to the ingestion of BEXTRA, especially to the long-term ingestion of BEXTRA;

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Page 16 of 21

c.  Verbal and written assurances made by PFIZER regarding BEXTRA and downplaying the risk of injuries associated with the drug;

d.  False and misleading written information, supplied by PFIZER, and published in the Physician's Desk Reference on an annual basis, upon which physicians relied in prescribing BEXTRA during the period of Decedent's ingestion of BEXTRA, and;

e.  advertisements.

2)  The documents referred to above were created by and at the direction of PFIZER.

3)  PFIZER knew or had reason to know that BEXTRA did not conform to these express representations in that BEXTRA is neither as safe nor as effective as represented and that BEXTRA produces serious adverse side effects.

4)  BEXTRA did not and does not conform to PFIZER's express representations because it is not safe, has numerous and serious side effects, including unwarned-of side effects and causes severe and permanent injuries.

5)  Plaintiffs, other consumers and the medical community relied upon PFIZER's express warranties.

6)  PFIZER's breach of express warranty and other wrongful acts caused or contributed to cause Plaintiffs' injuries and damages as set forth above.

65.  WHEREFORE, Plaintiffs individually demand and pray for judgment against PFIZER in an amount exceeding $75,000.00 with such other and further relief as the Court may deem just and equitable.

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Page 17 of 21

E.    **Count V: Negligence.**

66.    Plaintiffs adopt by reference Paragraphs 1 through 65.

67.    PFIZER and its predecessors were negligent in preparing, designing, researching, developing, producing, manufacturing, testing, inspecting, packaging, advertising, promoting, selling and/or distributing BEXTRA. PFIZER's negligence included, but is not limited to, the following:

a.    PFIZER negligently failed to provide any or adequate and proper warnings as to the dangers of the use of BEXTRA for persons who were reasonably and foreseeably expected to use BEXTRA, such as Plaintiffs named herein;

b.    PFIZER negligently failed to warn and failed to provide adequate instructions for the use of BEXTRA for persons who were reasonably and foreseeably expected to use BEXTRA, such as Plaintiffs herein;

c.    PFIZER negligently failed to investigate, perform adequate research and/or test for the hazards of BEXTRA;

d.    To the extent that PFIZER may have inquired as to the hazards of BEXTRA, PFIZER negligently failed to convey whatever knowledge or dangers, health hazards or safety precautions it may have had to the prescribers, users and consumers of BEXTRA;

e.    PFIZER negligently failed to include adequate warnings with the drug that would alert the medical, pharmaceutical and/or

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

scientific communities, and users and/or consumers of the drug, including Plaintiffs, to the potential risks and serious side effects of the drug;

f.      PFIZER negligently failed to adequately and properly test and inspect the drug before placing the drug on the market;

g.      PFIZER negligently failed to conduct sufficient testing and inspection of the drug which, if properly performed, would have shown that the drug had serious side effects, including but not limited to, an increased risk of adverse cardiovascular events and/or death;

h.      PFIZER negligently failed to adequately warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiffs, of the potential risks and other serious side effects associated with the drug, including but not limited to an increased risk of serious thromboembolic and cardiovascular events and/or death;

i.      PFIZER negligently failed to conduct adequate pre-clinical testing and research to determine the safety of BEXTRA;

j.      PFIZER failed to conduct adequate post-marketing surveillance and exposure studies to determine the safety of BEXTRA;

k.      PFIZER negligently failed to provide adequate post-marketing warnings or instructions after PFIZER knew, or should have known, of the significant risks associated with the use of the drug;

l.      PFIZER negligently failed to recall and/or remove the drug from the stream of commerce despite the fact that PFIZER knew, or

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

1    should have known, of the defective and unreasonably dangerous nature of

2    the drug, including the significant health risks associated with the use of

     the drug; and

3          m.    PFIZER negligently encouraged the misuse and overuse of

4    BEXTRA while failing to disclose the side effects of the drug to the

5    medical, pharmaceutical and/or scientific communities, and users and/or

6    consumers, including Plaintiffs, in order to make a profit from sales.

7    68.    PFIZER's negligence and other wrongful acts caused or contributed to

8    cause Plaintiffs' injuries and damages as set forth above.

9    69.    WHEREFORE, Plaintiffs individually demand and pray for judgment

10   against PFIZER in an amount exceeding $75,000.00 with such other and further relief as

11   the Court may deem just and equitable.

12   **VII.   DEMAND FOR JUDGMENT AGAINST DEFENDANTS PFIZER, INC.;
13        PHARMACIA CORPORATION; and G.D. SEARLE LLC.(FKA G.D.
         SEARLE & CO.).**

14        WHEREFORE, Plaintiffs, Charlotte Allen, Elizabeth Beutler and Lorraine Rowe,

15   individually demand judgment of and from PFIZER in an amount in excess of

16   $75,000.00 and seek compensatory damages together with interest, cost of suit and

17   attorney fees and for such other and further relief as the Court deems just and equitable.

18   **VIII.   DEMAND FOR JURY TRIAL.**

19        Plaintiffs demand a trial by jury on all claims so triable in this action.

20

21

22

23

---

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*
**Civil Complaint**

Respectfully submitted,

1

2

3    Dated: ___11/20/07___    _Mark B Hutton / HKee_

Mark B. Hutton

4    KS Bar #10112

Trial.Lawyers@huttonlaw.com

~~Elizabeth L. Dudley~~

5    KS Bar #21582

Liz.Dudley@huttonlaw.com

6    HUTTON & HUTTON LAW FIRM, L.L.C.

8100 East 22nd Street North, Bldg. 1200

7    P.O. Box 638

Wichita, Kansas 67201-0638

8    Telephone: (316) 688-1166

Facsimile: (316) 686-1077

9    www.huttonlaw.com

10    *Attorneys for Plaintiffs*

11

12    _Martha_

Martha K. Wivell, Esq.

13    MN Bar #128090

Attorney at Law

14    Box 339

Cook, MN 55723

15    Telephone: (218) 666-0250

MWivell@MSN.com

16

*Attorney for Plaintiffs and Local Counsel*

17

18

19

20

21

22

23

*Charlotte Allen, et al. vs. Pfizer Inc., et al.*

**Civil Complaint**                                    Page 21 of 21

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MDL 1699

SEP - 6 2005

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

*DOCKET NOS. 1691, 1693, 1694 & 1699*

## *BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION*

## *IN RE BEXTRA AND CELEBREX PRODUCTS LIABILITY LITIGATION*

## *IN RE BEXTRA MARKETING AND SALES PRACTICES LITIGATION*

## *IN RE CELEBREX MARKETING AND SALES PRACTICES LITIGATION*

## *IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION*

*BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,\* ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL*



### *TRANSFER ORDER*

Before the Panel are five motions, pursuant to 28 U.S.C. § 1407, in these four dockets[1] that taken together seek centralization for coordinated or consolidated pretrial proceedings of all, or a subset of, these 31 actions,[2] in various federal districts. The moving MDL-1691 Louisiana plaintiffs seek centralization of the Bextra and Celebrex products liability actions in the Eastern District of Louisiana, while the moving Connecticut plaintiffs seek centralization of these actions in the District of Connecticut. The moving Southern New York MDL-1693 plaintiff seeks centralization of all Bextra and Celebrex actions in the Southern District of New York. The moving MDL-1694 plaintiffs seek separate centralization of the Bextra actions and the Celebrex actions in the District of Massachusetts before different judges. The moving MDL-1699 Louisiana plaintiffs seek centralization of all Bextra and Celebrex actions in the Eastern District of Louisiana. Most responding plaintiffs agree that centralization is appropriate, although some plaintiffs suggest alternative transferee districts, including the Northern District of California, the District of Delaware, the Southern District of Florida, the District of New Jersey, and the Southern District



---

\* Judge Motz took no part in the decision of this matter.

[1] At the hearing session in these four dockets, the Panel heard combined oral argument. Accordingly, the overlapping issues raised in these dockets are addressed in this one order.

The Panel has been notified of more than 100 potentially related actions pending in multiple federal districts. In light of the Panel's disposition of these dockets, the additional actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

[2] One additional action, *James Booker v. Merck & Co., Inc., et al.*, N.D. Texas, C.A. No. 3:05-496, was included on the MDL-1691 and MDL-1699 motions. The Panel's decision regarding inclusion of this action in multidistrict proceedings will be addressed in a separate order.

IMAGED SEP - 7 2005          OFFICIAL FILE COPY

- 2 -

of Texas. Defendant Pfizer Inc. (Pfizer) opposes centralization of the products liability actions, but supports centralization of the marketing/sales practices actions. Pfizer suggests coordination of this latter group of actions (and of the products liability actions, if the Panel deems centralization of these actions to be appropriate) with MDL-1688–*In re Pfizer Inc. Securities, Derivative and "ERISA" Litigation* in the Southern District of New York.

On the basis of the papers filed and hearing session held, the Panel finds that the actions in these four multidistrict dockets involve common questions of fact, and that Section 1407 centralization of all actions as one multidistrict docket (MDL-1699) in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions focus on i) alleged increased health risks from taking Celebrex and/or Bextra, anti-inflammatory prescription medications, and ii) whether Pfizer, as the manufacturer of both medications, knew of these increased risks and failed to disclose them to the medical community and consumers and/or improperly marketed these medications to both of these groups. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary. Resolution of overlapping issues, concerning these similar prescription medications manufactured by the same company, will be streamlined. *See In re Managed Care Litigation*, 2000 U.S. Dist. LEXIS 15927 (J.P.M.L. Oct. 23, 2000).

Opponents of Section 1407 centralization of all actions in one multidistrict docket argue that the presence of unique questions of fact relating to each drug (Bextra and Celebrex) or to the type of claims asserted (products liability and marketing/sales practices) should produce a different result. These parties urge us, instead, to separately centralize these actions. We are unpersuaded by these arguments. Transfer under Section 1407 has the salutary effect of placing all actions before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F.Supp. 1403, 1404 (J.P.M.L. 1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. The transferee court can employ any number of pretrial techniques – such as establishing separate discovery and/or motion tracks – to efficiently manage this litigation. In any event, we leave the extent and manner of coordination or consolidation of these actions to the discretion of the transferee court. *In re Mutual Funds Investment Litigation*, 310 F.Supp.2d 1359 (J.P.M.L. 2004). We are confident in the transferee judge's ability to streamline pretrial proceedings in these actions, while concomitantly directing the appropriate resolution of all claims.

Given the geographic dispersal of constituent actions and potential tag-along actions, no district stands out as the geographic focal point for this nationwide docket. Thus we have searched for a transferee judge with the time and experience to steer this complex litigation on a prudent course. By centralizing this litigation in the Northern District of California before Judge Charles R. Breyer, we are assigning this litigation to a jurist experienced in complex multidistrict litigation and sitting in a district with the capacity to handle this litigation.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on the attached Schedule A and pending outside the Northern District of California are transferred to the

- 3 -

Northern District of California and, with the consent of that court, assigned to the Honorable Charles R. Breyer for coordinated or consolidated pretrial proceedings with the action pending there and listed on Schedule A.

IT IS FURTHER ORDERED that the actions in MDL-1691, MDL-1693 and MDL-1694 are merged into MDL-1699 *In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation.*

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# SCHEDULE A

<u>MDL-1699 -- In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation</u>

### Northern District of Alabama

*Darryl Blue, etc. v. Pfizer, Inc.*, C.A. No. 2:05-464
*Martha Ann Lemond, et al. v. Merck & Co., Inc., et al.*, C.A. No. 7:05-691

### District of Arizona

*Dorothy Greaves v. Pfizer, Inc., et al.*, C.A. No. 2:05-647

### Central District of California

*John Bolwell, et al. v. Pfizer, Inc.*, C.A. No. 2:05-1967

### Northern District of California

*June Swan, et al. v. Pfizer, Inc., et al.*, C.A. No. 3:05-834

### District of Connecticut

*Kenneth Kaye, et al. v. Pfizer, Inc.*, C.A. No. 3:05-385
*Irene Bailey, et al. v. Pfizer, Inc., et al.*, C.A. No. 3:05-386

### District of Delaware

*Ronnie L. Hatcher v. Pfizer, Inc., et al.*, C.A. No. 1:05-208

### Northern District of Florida

*Marie McConnell v. Pfizer, Inc.*, C.A. No. 3:05-123

### Southern District of Florida

*Aurora Balloveras v. Pfizer, Inc.*, C.A. No. 1:05-20429

### Eastern District of Louisiana

*Gloria Ward v. Pfizer, Inc.*, C.A. No. 2:04-3469
*Elmer E. Creel, Sr., et al. v. Pfizer, Inc.*, C.A. No. 2:04-3470
*Carol J. Aiola v. Pfizer, Inc.*, C.A. No. 2:05-1207

- A2 -

*Ronald J. Babin v. Pfizer, Inc.*, C.A. No. 2:05-1208
*Deborah Ann Woodberry v. Pfizer, Inc.*, C.A. No. 2:05-1350
*Terry Bridges v. Pfizer, Inc.*, C.A. No. 2:05-1353
*George Hoffman v. Pfizer, Inc.*, C.A. No. 2:05-1354
*Helen Anne Todini v. Pfizer, Inc.*, C.A. No. 2:05-1367
*Betty A. Alexander, et al. v. Pfizer, Inc.*, C.A. No. 2:05-1720

### Middle District of Louisiana

*Ronald W. Abel, etc. v. Pfizer, Inc.*, C.A. No. 3:05-258

### Western District of Louisiana

*William Doss Turner v. Pfizer, Inc.*, C.A. No. 1:05-619
*Yvonne Clark v. Pfizer, Inc.*, C.A. No. 1:05-620

### District of Massachusetts

*Health Care for All, et al. v. Pfizer, Inc., et al.*, C.A. No. 1:05-10707

### Eastern District of Michigan

*Linda A. Watters, et al. v. Pfizer, Inc., et al.*, C.A. No. 2:05-71434

### District of Minnesota

*Loretta M. Harris v. Pfizer, Inc.*, C.A. No. 0:05-728

### Eastern District of New York

*Melissa Kelly, et al. v. Pfizer, Inc.*, C.A. No. 1:05-949

### Southern District of New York

*ASEA/AFSCME Local 52 Health Benefits Trust v. Pfizer, Inc., et al.*,
C.A. No. 1:05-3803
*Steamfitters' Industry Welfare Fund, et al. v. Pfizer, Inc., et al.*, C.A. No. 1:05-3814
*Sheet Metal Workers' International Assn. v. Pfizer, Inc., et al.*, C.A. No. 1:05-4125

### Northern District of Ohio

*Theresa Blatnik, et al. v. Pfizer, Inc.*, C.A. No. 1:05-900



- A3 -

<u>Southern District of Texas</u>

*Ronald L. Baker, et al. v. Pfizer, Inc.*, C.A. No. 3:05-206

§JS 44 (Rev 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CHARLOTTE ALLEN; ELIZABETH BEUTLER; and LORRAINE ROWE

## DEFENDANTS

Pfizer, Inc., a Delaware Corporation; Pharmacia Corporation, a Delaware Corporation;  and
G.D. Searle LLC, a Delaware Corporation

**(b)** County of Residence of First Listed Plaintiff  State of Kasas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

AGENT FOR SERVICE OF PROCESS IN MPLS., MN

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Martha K. Wivell, Esq., #0128090
Suite 1025 Fifth Street, 100 South Fifth Street
Minneapolis, MN 55402
Telephone:  (612) 767-7500

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U S Government Defendant | ☒ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff

(For Diversity Cases Only)                                  and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALT | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☒ 365 Personal Injury — | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret Inc | ☐ 871 IRS—Third Party | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/ Disabilities Employment | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | ☐ 950 Constitutionality of State Statues |
| | ☐ 446 Amer w/ Disabilities – Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation |
| ☐ 7 Appeal to District Judge from Magistrate Judgment | |

## VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. Section 1332
Brief dscription of cause: Products Liability

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F R C P 23

DEMAND $
In excess of $75,000

CHECK YES only if demanded in complaint.
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions).   MDL 1699 Northern District of California
JUDGE                          DOCKET NUMBER  MDL 1699

DATE  11/20/07

SIGNATURE OF ATTORNEY OF RECORD   Martha Wivell

FOR OFFICE USE ONLY

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| CHARLOTTE ALLEN, ELIZABETH BEUTLER, and LORRAINE ROWE, | Case No.: 07-CV-4670-MJD/AJB |
| Plaintiffs, | |
| v. | DEFENDANTS PFIZER INC., PHARMACIA CORPORATION, AND G.D. SEARLE LLC'S ANSWER TO PLAINTIFFS' COMPLAINT |
| PFIZER, INC., PHARMACIA CORPORATION, and G.D. SEARLE LLC, | |
| Defendants. | Jury Trial Demanded |

---

NOW COME Defendants Pfizer Inc. (improperly captioned in Plaintiffs' Complaint as "Pfizer, Inc.") ("Pfizer"), Pharmacia Corporation ("Pharmacia") and G.D. Searle LLC ("Searle") and file this Answer to Plaintiffs' Complaint ("Complaint"), and would respectfully show the Court as follows:

I.

ORIGINAL ANSWER

Response to Introduction

1.     Defendants admit that Plaintiffs brought this civil action seeking monetary damages, but deny that Plaintiffs are entitled to any relief or damages. Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Bextra® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants deny any wrongful conduct, deny that that Bextra® is defective or

unreasonably dangerous, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

2.      Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants admit that this case should be transferred to In re: Celebrex and Bextra Marketing, Sales Prac. and Prods. Liab. Litig., MDL-1699, assigned to the Honorable Charles R. Breyer by the Judicial Panel on Multidistrict Litigation on September 6, 2005.  Defendants deny the remaining allegations in this paragraph of the Complaint.

<u>**Response to Allegations Regarding Parties**</u>

3.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's age and citizenship, and, therefore, deny the same.  Defendants deny the remaining allegations in this paragraph of the Complaint.

4.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's age and citizenship, and, therefore, deny the same.  Defendants deny the remaining allegations in this paragraph of the Complaint.

5.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's age and citizenship, and, therefore, deny the same.  Defendants deny the remaining allegations in this paragraph of the Complaint.

6.      Defendants admit that Pfizer is a Delaware corporation with its principal place of business in New York, and that Pfizer does business in the State of Minnesota.  Defendants admit that, as the result of a merger in April 2003, Pharmacia became a subsidiary of Pfizer. Defendants state that the allegations in this paragraph of the Complaint regarding "predecessors in interest" are vague and ambiguous.  Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, deny the same.

Defendants admit that, during certain periods of time, Pfizer marketed and co-promoted Bextra® in the United States, including Minnesota, to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants deny the remaining allegations in this paragraph of the Complaint.

7.      Defendants admit that Searle is a Delaware limited liability company with its principal place of business in Illinois. Defendants admit that Pharmacia acquired Searle in 2000, and, that, as the result of a merger in April 2003, Searle and Pharmacia became subsidiaries of Pfizer. Defendants admit that, during certain periods of time, Bextra® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants deny the remaining allegations in this paragraph of the Complaint.

8.      Defendants admit that Pharmacia is a Delaware corporation with its principal place of business in New Jersey. Defendants admit that Pharmacia acquired Searle in 2000, and, that, as the result of a merger in April 2003, Searle and Pharmacia became subsidiaries of Pfizer. Defendants admit that, during certain periods of time, Pharmacia marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants state that the allegations in this paragraph of the Complaint regarding "predecessors in interest" are vague and ambiguous. Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, deny the same. Defendants deny the remaining allegations in this paragraph of the Complaint.

9.      Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Bextra® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Bextra® in the United States to

be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that Pharmacia acquired Searle in 2000, and,that, as the result of a merger in April 2003, Searle and Pharmacia became subsidiaries of Pfizer. Defendants deny the remaining allegations in this paragraph of the Complaint.

10.    Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants admit that, during certain periods of time, Bextra® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

11.    Defendants deny the allegations in this paragraph of the Complaint.

## Response to Allegations Regarding Jurisdiction and Venue

12.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiffs' citizenship and the amount in controversy, and, therefore, deny the same. However, Defendants admit that Plaintiffs claim that the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs.

13.    Defendants admit that Pfizer is registered to do business in the State of Minnesota. Defendant admits that Pfizer maintains a registered agent in the State of Minnesota. Defendants deny the remaining allegations in this paragraph of the Complaint.

14.     Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations in this paragraph of the Complaint.

15.     Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants deny the allegations in this paragraph of the Complaint.

16.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding the judicial district in which the asserted claims allegedly arose and, therefore, deny the same.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants deny any wrongful conduct, deny committing a tort in the State of Minnesota, and deny the remaining allegations in this paragraph of the Complaint.

17.     Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Bextra® in the United States, including Minnesota, to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants admit that, during certain periods of time, Bextra® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants admit that Pfizer, Pharmacia, and Searle do business in the State of Minnesota.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

## Response to Factual Allegations

18.     Defendants state that the allegations in this paragraph of the Complaint are not directed toward Defendants, and, therefore, no response is required.  To the extent that a response is deemed required, Defendants state that Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint.  Defendants therefore lack knowledge or information sufficient to form a belief as to the truth of such allegations and, therefore, deny the same.

19.     Defendants state that the allegations in this paragraph of the Complaint are not directed toward Defendants, and, therefore, no response is required.  To the extent that a response is deemed required, Defendants state that Plaintiffs fail to provide the proper context for the allegations in this paragraph of the Complaint.  Defendants therefore lack knowledge or information sufficient to form a belief as to the truth of such allegations and, therefore, deny the same.

20.     Defendants admit that the FDA approved Celebrex® on December 31, 1998.  Defendants admit that Pharmacia acquired Searle in 2000, and, that, as the result of a merger in April 2003, Searle and Pharmacia became subsidiaries of Pfizer.  Defendants deny the remaining allegations in this paragraph of the Complaint.

21.     Defendants admit that Searle submitted a New Drug Application ("NDA") for parecoxib sodium on September 11, 2000, for the management of acute pain in adults and for opioid sparing.  Defendants state that parecoxib sodium is an injectable form of valdecoxib.  Defendants admit that the FDA denied the application for parecoxib sodium in July 2001.  Defendants deny the remaining allegations in this paragraph of the Complaint.

22.     Defendants admit that a NDA for Bextra® was filed with the FDA on January 15, 2001.  Defendants deny the remaining allegations in this paragraph of the Complaint.

23.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiffs used Bextra®, and, therefore, deny the same.  Defendants state that Bextra® was and is safe and

effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants state that the allegations in this paragraph of the Complaint regarding "predecessors" are vague and ambiguous. Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, deny the same. Defendants deny any wrongful conduct, deny that Bextra® is defective, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

24.     Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants state that the allegations in this paragraph of the Complaint regarding "predecessors" are vague and ambiguous. Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, deny the same. Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

25.     Defendants admit that Bextra® was approved by the FDA on November 16, 2001. Defendants admit, as indicated in the package insert approved by the FDA, that Bextra® is indicated for use in the relief of the signs and symptoms of osteoarthritis and adult rheumatoid arthritis, as well as for the treatment of primary dysmenorrhea. Defendants deny the remaining allegations in this paragraph of the Complaint.

26.     Defendants admit that Pharmacia acquired Searle in 2000, and, that, as the result of a merger in April 2003, Searle and Pharmacia became subsidiaries of Pfizer. Defendants deny the remaining allegations in this paragraph of the Complaint.

27.     Defendants deny the allegations in this paragraph of the Complaint.

28.    Defendants admit that a labeling revision for Bextra® was issued on November 24, 2004. Defendants state that the revised Bextra® label speaks for itself and respectfully refer the Court to the revised Bextra® label for its actual language and full text.  Any attempt to characterize the revised Bextra® label is denied.  Defendants deny the remaining allegations in this paragraph of the Complaint.

29.    Defendants state that the revised Bextra® label speaks for itself and respectfully refer the Court to the revised Bextra® label for its actual language and full text.  Any attempt to characterize the revised Bextra® label is denied.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint.

30.    Defendants admit that the sale of Bextra® was voluntarily suspended in the United States market as of April 7, 2005.  Defendants state that the referenced Alert for Healthcare Professionals speaks for itself and respectfully refer the Court to the Alert for Healthcare Professionals for its actual language and full text.  Any attempt to characterize the Alert for Healthcare Professionals is denied.  Defendants deny the remaining allegations in this paragraph of the Complaint.

### Response to Plaintiffs' Individual Statements of Facts

31.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's medical condition and whether Plaintiff used Bextra®, and, therefore, deny the same.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants deny that Bextra® caused Plaintiff injury or damage and deny the remaining allegations in this paragraph of the Complaint.

32.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, deny the same.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct, that Bextra® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

33.     Defendants deny any wrongful conduct, that Bextra® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

34.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's medical condition and whether Plaintiff used Bextra®, and, therefore, deny the same.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants deny that Bextra® caused Plaintiff injury or damage and deny the remaining allegations in this paragraph of the Complaint.

35.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, deny the same.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct, deny that Bextra® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

36.     Defendants deny any wrongful conduct, that Bextra® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

37.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding Plaintiff's medical condition and whether Plaintiff used Bextra®, and, therefore, deny the same.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants deny that Bextra® caused Plaintiff injury or damage and deny the remaining allegations in this paragraph of the Complaint.

38.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiff used Bextra®, and, therefore, deny the same.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct, that Bextra® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

39.     Defendants deny any wrongful conduct, that Bextra® caused Plaintiff injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

**Response to First Cause of Action: Strict Liability**

40.     Defendants incorporate by reference their responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

41.     Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants admit that, during certain periods of time, Bextra® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Bextra® in the United States to

be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA. Defendants state that the allegations in this paragraph of the Complaint regarding "predecessors in interest" are vague and ambiguous. Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, deny the same. Defendants deny the remaining allegations in this paragraph of the Complaint.

42.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiffs used Bextra®, and, therefore, deny the same. Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct, deny that Bextra® is defective or unreasonably dangerous, and deny the remaining allegations in this paragraph of the Complaint.

43.     Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information. Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law. Defendants deny any wrongful conduct, deny that Bextra® is defective or unreasonably dangerous, and deny the remaining allegations in this paragraph of the Complaint.

44.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiffs used Bextra®, and, therefore, deny the same. Defendants state that, in the ordinary case, Bextra® was expected to reach users and consumers without substantial change from the time of sale. Defendants deny the remaining allegations in this paragraph of the Complaint.

45.    Defendants deny any wrongful conduct, deny that Bextra® is defective, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

46.    Defendants deny any wrongful conduct, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

**Response to Second Cause of Action: Breach of Implied Warranty of Merchantability**

47.    Defendants incorporate by reference their responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

48.    Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants admit that, during certain periods of time, Bextra® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants state that the allegations in this paragraph of the Complaint regarding "predecessors in interest" are vague and ambiguous.  Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, deny the same.  Defendants deny the remaining allegations in this paragraph of the Complaint.

49.    Defendants admit that they provided FDA-approved prescribing information regarding Bextra®.  Defendants deny the remaining allegations in this paragraph of the Complaint.

50.    Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants

deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

51.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiffs used Bextra®, and, therefore, deny the same.  Defendants deny the remaining allegations in this paragraph of the Complaint.

52.     Defendants deny any wrongful conduct, deny any breach of warranty, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

53.     Defendants deny any wrongful conduct, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

**Response to Third Cause of Action:**
**Breach of Implied Warranty of Fitness for a Particular Purpose**

54.     Defendants incorporate by reference their responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

55.     Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants admit that, during certain periods of time, Pfizer and Pharmacia marketed and co-promoted Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants admit that, during certain periods of time, Bextra® was manufactured and packaged for Searle, which developed, tested, marketed, co-promoted and distributed Bextra® in the United States to be prescribed by healthcare providers who are by law authorized to prescribe drugs in accordance with their approval by the FDA.  Defendants state that the allegations in this paragraph of the Complaint regarding "predecessors in interest" are vague and ambiguous.  Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations, and,

therefore, deny the same.  Defendants deny the remaining allegations in this paragraph of the Complaint.

56.    Defendants deny the allegations in this paragraph of the Complaint.

57.    Defendants state that this paragraph of the Complaint contains legal contentions to which no response is required.  To the extent that a response is deemed required, Defendants admit that they provided FDA-approved prescribing information regarding Bextra®.  Defendants deny the remaining allegations in this paragraph of the Complaint.

58.    Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

59.    Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants deny any wrongful conduct and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

60.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiffs used Bextra®, and, therefore, deny the same.  Defendants deny the remaining allegations in this paragraph of the Complaint.

61.    Defendants deny any wrongful conduct, deny any breach of warranty, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

62.     Defendants deny any wrongful conduct, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

### Response to Fourth Cause of Action: Breach Express Warranty

63.     Defendants incorporate by reference their responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

64.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiffs used Bextra®, and, therefore, deny the same.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants admit that they provided FDA-approved prescribing information regarding Bextra®.  Defendants deny any wrongful conduct, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

65.     Defendants deny any wrongful conduct, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

### Response to Fifth Cause of Action: Negligence

66.     Defendants incorporate by reference their responses to each paragraph of Plaintiffs' Complaint as if fully set forth herein.

67.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint regarding whether Plaintiffs used Bextra®, and, therefore, deny the same.  Defendants state that Bextra® was and is safe and effective when used in accordance with its FDA-approved prescribing information.  Defendants state that the potential effects of Bextra® were and are adequately described in its FDA-approved prescribing information, which was at all times adequate and comported with applicable standards of care and law.  Defendants state that the allegations in this paragraph of

the Complaint regarding "predecessors in interest" are vague and ambiguous. Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegations, and, therefore, deny the same. Defendants deny any wrongful conduct , deny that Bextra® is defective or unreasonably dangerous, and deny the remaining allegations in this paragraph of the Complaint, including all subparts.

68.    Defendants deny any wrongful conduct, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

69.    Defendants deny any wrongful conduct, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

## Response to Demand For Judgment

Answering the unnumbered paragraph of the Complaint headed "Demand For Judgment Against Defendants Pfizer, Inc.; Pharmacia Corporation; and G.D. Searle LLC (FKA G.D. Searle & Co.)," Defendants deny any wrongful conduct, deny that Bextra® caused Plaintiffs injury or damage, and deny the remaining allegations in this paragraph of the Complaint.

## II.
## GENERAL DENIAL

Defendants deny the allegations and/or legal conclusions set forth in Plaintiffs' Complaint that have not been previously admitted, denied, or explained.

## III.
## AFFIRMATIVE DEFENSES

Defendants reserve the right to rely upon any of the following or additional defenses to claims asserted by Plaintiffs to the extent that such defenses are supported by information developed through discovery or evidence at trial. Defendants affirmatively show that:

## First Defense

1.    The Complaint fails to state a claim upon which relief can be granted.

## Second Defense

2.      Bextra® is a prescription medical product.  The federal government has preempted the field of law applicable to the labeling and warning of prescription medical products. Defendants' labeling and warning of Bextra® was at all times in compliance with applicable federal law.  Plaintiffs' causes of action against Defendants, therefore, fail to state a claim upon which relief can be granted; such claims, if allowed, would conflict with applicable federal law and violate the Supremacy Clause of the United States Constitution.

## Third Defense

3.      At all relevant times, Defendants provided proper warnings, information and instructions for the drug in accordance with generally recognized and prevailing standards in existence at the time.

## Fourth Defense

4.      At all relevant times, Defendants' warnings and instructions with respect to the use of Bextra® conformed to the generally recognized, reasonably available, and reliable state of knowledge at the time the drug was manufactured, marketed and distributed.

## Fifth Defense

5.      Plaintiffs' action is time-barred as it is filed outside of the time permitted by the applicable Statute of Limitations, and same is pled in full bar of any liability as to Defendants.

## Sixth Defense

6.      Plaintiffs' action is barred by the statute of repose.

## Seventh Defense

7.      If Plaintiffs sustained any injuries or incurred any losses or damages as alleged in the Complaint, the same were caused by the negligence or fault of the Plaintiffs and Plaintiffs' damages, if any, are barred or reduced by the doctrines of comparative fault and contributory negligence and by the failure to mitigate damages.

## Eighth Defense

8.      The proximate cause of the loss complained of by Plaintiffs is not due to any acts or omissions on the part of Defendants.  Rather, said loss is due to the acts or omissions on the part of third parties unrelated to Defendants and for whose acts or omissions Defendants are not liable in any way.

## Ninth Defense

9.      The acts and/or omissions of unrelated third parties as alleged constituted independent, intervening causes for which Defendants cannot be liable.

## Tenth Defense

10.      Any injuries or expenses incurred by Plaintiffs were not caused by Bextra®, but were proximately caused, in whole or in part, by an idiosyncratic reaction, operation of nature, or act of God.

## Eleventh Defense

11.      Defendants affirmatively deny that they violated any duty owed to Plaintiffs.

## Twelfth Defense

12.      A manufacturer has no duty to warn patients or the general public of any risk, contraindication, or adverse effect associated with the use of a prescription medical product. Rather, the law requires that all such warnings and appropriate information be given to the prescribing physician and the medical profession, which act as a "learned intermediary" in determining the use of the product.  Bextra® is a prescription medical product, available only on the order of a licensed physician.  Bextra® provided an adequate warning to Plaintiffs' treating and prescribing physicians.

## Thirteenth Defense

13.      The product at issue was not in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

### Fourteenth Defense

14.    Bextra® was at all times material to the Complaint reasonably safe and reasonably fit for its intended use and the warnings and instructions accompanying Bextra® at the time of the occurrence of the injuries alleged by Plaintiffs were legally adequate for its approved usages.

### Fifteenth Defense

15.    Plaintiffs' causes of action are barred in whole or in part by the lack of a defect as the Bextra® allegedly ingested by Plaintiffs was prepared in accordance with the applicable standard of care.

### Sixteenth Defense

16.    If Plaintiffs sustained any injuries or incurred any losses or damages as alleged in the Complaint, the same were caused by the unforeseeable alteration, change, improper handling, abnormal use, or other unforeseeable misuse of Bextra® by persons other than Defendants or persons acting on its behalf after the product left the control of Defendants.

### Seventeenth Defense

17.    Plaintiffs' alleged damages were not caused by any failure to warn on the part of Defendants.

### Eighteenth Defense

18.    Plaintiffs' alleged injuries/damages, if any, were the result of preexisting or subsequent conditions unrelated to Bextra®.

### Nineteenth Defense

19.    Plaintiffs knew or should have known of any risk associated with Bextra®; therefore, the doctrine of assumption of the risk bars or diminishes any recovery.

### Twentieth Defense

20.    Plaintiffs are barred from recovering against Defendants because Plaintiffs' claims are preempted in accordance with the Supremacy Clause of the United States Constitution and by the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 *et. seq.*

### Twenty-first Defense

21.    Plaintiffs' claims are barred in whole or in part under the applicable state law because the subject pharmaceutical product at issue was subject to and received pre-market approval by the Food and Drug Administration under 52 Stat. 1040, 21 U.S.C. § 301.

### Twenty-second Defense

22.    The manufacture, distribution and sale of the pharmaceutical product referred to in Plaintiffs' Complaint were at all times in compliance with all federal regulations and statutes, and Plaintiffs' causes of action are preempted.

### Twenty-third Defense

23.    Plaintiffs' claims are barred in whole or in part by the deference given to the primary jurisdiction of the Food and Drug Administration over the subject pharmaceutical product at issue under applicable federal laws, regulations, and rules.

### Twenty-fourth Defense

24.    Plaintiffs' claims are barred in whole or in part because there is no private right of action concerning matters regulated by the Food and Drug Administration under applicable federal laws, regulations, and rules.

### Twenty-fifth Defense

25.    Plaintiffs' claims are barred in whole or in part because Defendants provided adequate "direction or warnings" as to the use of the subject pharmaceutical product within the meaning of Comment j to Section 402A of the Restatement (Second) of Torts.

### Twenty-sixth Defense

26.    Plaintiffs' claims are barred or limited to a product liability failure to warn claim because Bextra® is a prescription pharmaceutical drug and falls within the ambit of Restatement (Second) of Torts § 402A, Comment k.

**Twenty-seventh Defense**

27.    Plaintiffs' claims are barred in whole or in part because the subject pharmaceutical product at issue "provides net benefits for a class of patients" within the meaning of Comment f to § 6 of the Restatement (Third) of Torts: Products Liability.

**Twenty-eighth Defense**

28.    Plaintiffs' claims are barred under § 4, et seq., of the Restatement (Third) of Torts: Products Liability.

**Twenty-ninth Defense**

29.    To the extent that Plaintiffs are seeking punitive damages, Plaintiffs have failed to plead facts sufficient under the law to justify an award of punitive damages.

**Thirtieth Defense**

30.    The imposition of punitive damages in this case would violate Defendants' rights to procedural due process under the Fourteenth Amendment of the United States Constitution, Article I, § 17 of the Constitution of the States of Minnesota, and the Constitutions of the States of Kansas and Oklahoma, and would additionally violate Defendants' right to substantive due process under the Fourteenth Amendment of the United States Constitution.

**Thirty-first Defense**

31.    Plaintiffs' claims for punitive damages are barred, in whole or in part, by the Fifth and Fourteenth Amendments to the United States Constitution and are subject to all provisions of Minnesota, Kansas, and Oklahoma law, including, but not limited to, Minn. Stat. § 549.191 (2006).

**Thirty-second Defense**

32.    The imposition of punitive damages in this case would violate the First Amendment to the United States Constitution.

**Thirty-third Defense**

33.    Plaintiffs' punitive damage claims are preempted by federal law.

**Thirty-fourth Defense**

34.     In the event that reliance was placed upon Defendants' nonconformance to an express representation, this action is barred as there was no reliance upon representations, if any, of Defendants.

**Thirty-fifth Defense**

35.     Plaintiffs failed to provide Defendants with timely notice of any alleged nonconformance to any express representation.

**Thirty-sixth Defense**

36.     To the extent that Plaintiffs' claims are based on a theory providing for liability without proof of causation, the claims violate Defendants' rights under the United States Constitution.

**Thirty-seventh Defense**

37.     Plaintiffs' claims are barred, in whole or in part, because the advertisements, if any, and labeling with respect to the subject pharmaceutical products were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States Constitution.

**Thirty-eighth Defense**

38.     To the extent that Plaintiffs seek punitive damages for the conduct which allegedly caused injuries asserted in the Complaint, punitive damages are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process protections afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment of the United States Constitution, the Commerce Clause of the United States Constitution, and the Full Faith and Credit Clause of the United States Constitution and the Constitutions of the States of Minnesota, Kansas, and Oklahoma.  Any law, statute, or other authority purporting to permit the recovery of punitive damages in this case is unconstitutional, facially and as applied, to the extent that, without limitation, it: (1) lacks constitutionally sufficient standards to guide and restrain the jury's discretion in determining whether to award punitive damages and/or the amount, if any; (2) is void for vagueness in that it failed to provide

adequate advance notice as to what conduct will result in punitive damages; (3) permits recovery of punitive damages based on out-of-state conduct, conduct that complied with applicable law, or conduct that was not directed, or did not proximately cause harm, to Plaintiffs; (4) permits recovery of punitive damages in an amount that is not both reasonable and proportionate to the amount of harm, if any, to Plaintiffs and to the amount of compensatory damages, if any; (5) permits jury consideration of net worth or other financial information relating to Defendants; (6) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict review of any punitive damages awards; (7) lacks constitutionally sufficient standards for appellate review of punitive damages awards; and (8) otherwise fails to satisfy Supreme Court precedent, including, without limitation, *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 (1991), *TXO Production Corp. v. Alliance Resources, Inc.*, 509 U.S. 443 (1993); *BMW of North America, Inc. v. Gore*, 519 U.S. 559 (1996); and *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

### Thirty-ninth Defense

39.     The methods, standards, and techniques utilized with respect to the manufacture, design, and marketing of Bextra®, if any, used in this case, included adequate warnings and instructions with respect to the product's use in the package insert and other literature, and conformed to the generally recognized, reasonably available, and reliable state of the knowledge at the time the product was marketed.

### Fortieth Defense

40.     The claims asserted in the Complaint are barred because Bextra® was designed, tested, manufactured and labeled in accordance with the state-of-the-art industry standards existing at the time of the sale.

### Forty-first Defense

41.     If Plaintiffs have sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not

having real or apparent authority to take said actions on behalf of Defendants and over whom Defendants had no control and for whom Defendants may not be held accountable.

### Forty-second Defense

42.    The claims asserted in the Complaint are barred, in whole or in part, because Bextra® was not unreasonably dangerous or defective, was suitable for the purpose for which it was intended, and was distributed with adequate and sufficient warnings.

### Forty-third Defense

43.    Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, and/or estoppel.

### Forty-fourth Defense

44.    Plaintiffs' claims are barred because Plaintiffs' injuries, if any, were the result of the pre-existing and/or unrelated medical, genetic and/or environmental conditions, diseases or illnesses, subsequent medical conditions or natural courses of conditions of Plaintiffs, and were independent of or far removed from Defendants' conduct.

### Forty-fifth Defense

45.    The claims asserted in the Complaint are barred, in whole or in part, because Bextra® did not proximately cause injuries or damages to Plaintiffs.

### Forty-sixth Defense

46.    The claims asserted in the Complaint are barred, in whole or in part, because Plaintiffs did not incur any ascertainable loss as a result of Defendants' conduct.

### Forty-seventh Defense

47.    The claims asserted in the Complaint are barred, in whole or in part, because the manufacturing, labeling, packaging, and any advertising of the product complied with the applicable codes, standards and regulations established, adopted, promulgated or approved by any applicable regulatory body, including but not limited to the United States, any state, and any agency thereof.

### Forty-eighth Defense

48.    The claims must be dismissed because Plaintiffs would have taken Bextra® even if the product labeling contained the information that Plaintiffs contend should have been provided.

### Forty-ninth Defense

49.    The claims asserted in the Complaint are barred because the utility of Bextra® outweighed its risks.

### Fiftieth Defense

50.    Plaintiffs' damages, if any, are barred or limited by the payments received from collateral sources.

### Fifty-first Defense

51.    Defendants' liability, if any, can only be determined after the percentages of responsibility of all persons who caused or contributed toward Plaintiffs' alleged damages, if any, are determined.   Defendants seek an adjudication of the percentage of fault of the claimants and each and every other person whose fault could have contributed to the alleged injuries and damages, if any, of Plaintiffs.

### Fifty-second Defense

52.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of abstention in that the common law gives deference to discretionary actions by the United States Food and Drug Administration under the Federal Food, Drug, and Cosmetic Act.

### Fifty-third Defense

53.    The claims asserted in the Complaint are barred, in whole or in part, because Bextra® is comprehensively regulated by the FDA pursuant to the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, and regulations promulgated there under, and Plaintiffs' claims conflict with the FDCA, with the regulations promulgated by FDA to implement the FDCA, with the purposes and objectives of the FDCA and FDA's implementing regulations, and with the specific determinations by FDA specifying the language that should be used in the labeling accompanying Bextra®.   Accordingly, Plaintiffs' claims are preempted by the

Supremacy Clause of the United States Constitution, Article VI, clause 2, and the laws of the United States.

### Fifty-fourth Defense

54.    Plaintiffs' misrepresentation allegations are not stated with the degree of particularity required by Federal Rule of Civil Procedure 9(b) and should be dismissed.

### Fifty-fifth Defense

55.    Defendants state that to the best of their knowledge, information, and belief, reasonable discovery will likely produce evidentiary support demonstrating that the fault of others for whom Defendants are not responsible directly caused or contributed to Plaintiffs' and Decedents' injuries, and the fault of Plaintiffs and Decedents and such others should be compared pursuant to K.S.A. § 60-258(a).

### Fifty-sixth Defense

56.    Plaintiffs' claims are barred by Defendants' compliance with relevant legislative and administrative regulatory safety standards authorized by the Kansas Product Liability Act, K.S.A. §§ 60-3301, et seq.

### Fifty-seventh Defense

57.    To the extent Plaintiffs contend that Plaintiffs are entitled to damages pursuant to a personal injury claim, which contention is expressly denied, claims for non-economic losses may not exceed $250,000 pursuant to K.S.A. § 60-19a.

### Fifty-eighth Defense

58.    Plaintiffs' claims against Defendants are barred by K.S.A. § 60-3306.

### Fifty-ninth Defense

59.    Plaintiffs' claims against Defendants are limited by K.S.A. § 60-1903.

### Sixtieth Defense

60.    Defendants state that any award of punitive damages in this case would violate Defendants' procedural and substantive due process rights because there are insufficient circumstances in this case to support the reasonableness of an award of punitive damages and

there are inadequate legal and procedural constraints imposed on the fact finder's discretion to impose such awards. The standard for punitive damages in Kansas lacks sufficient objective criteria and procedural safeguards to give a jury adequate criteria or an appropriate range of proportionality regarding punitive damages.

### Sixty-first Defense

61.     Defendants state that it would violate Defendants' rights guaranteed by the United States Constitution and the Kansas Constitution to impose punitive damages against them which are penal in nature by requiring a burden of proof on Plaintiffs which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases. In the alternative, entitlement to such damages would be provided by a "clear" and "convincing" standard of proof, in view of insufficient substantive and procedural protections under Kansas law regarding punitive damages.

### Sixty-second Defense

62.     Oklahoma's judicially-created definitions of manufacturing defect and design defect, and standard for determining whether there has been an actionable failure to warn, are unconstitutional in that, among other things, they are void for vagueness and an undue burden on interstate commerce, as well as an impermissible effort to regulate in an area that previously has been preempted by the federal government.

### Sixty-third Defense

63.     To the extent that Plaintiffs seek punitive damages for an alleged act or omission of Defendants, no act or omission was in reckless disregard for the rights of others, committed intentionally and with malice toward others in conduct life-threatening to humans, under Okla. Stat. tit. 23 § 9.1, and therefore, any award of punitive damages is barred. Any claim for punitive damages is also barred under Okla. Stat. tit. 23 § 9.1 and the Oklahoma State Constitution.

**Sixty-fourth Defense**

64.    Defendants reserve the right to supplement their assertion of defenses as they continue with their factual investigation of Plaintiffs' claims.

**IV.**
**JURY DEMAND**

Defendants hereby demand a trial by jury.

**V.**
**PRAYER**

WHEREFORE, Defendants pray that Plaintiffs take nothing by their suit; that Defendants be discharged with their costs expended in this matter, and for such other and further relief to which it may be justly entitled.

Dated:  December 10, 2007.            FAEGRE & BENSON LLP

                          /s/ Joseph M. Price
                          Joseph M. Price, # 88201
                          Erin M. Verneris # 0335174
                          2200 Wells Fargo Center
                          90 South Seventh Street
                          Minneapolis, MN  55402-3901
                          T (612) 766-7000
                          F (612) 766-1600

                          *Attorneys for Defendants Pfizer Inc.,*
                          *Pharmacia Corporation, and G.D. Searle LLC*

fb.us.2473351.02

07-4070 MDL/SRW

A CERTIFIED TRUE COPY

JAN 3 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

**DEC 14 2007**

FILED
CLERK'S OFFICE

**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION

MDL No. 1699

(SEE ATTACHED SCHEDULE)

**CONDITIONAL TRANSFER ORDER (CTO-91)**

On September 6, 2005, the Panel transferred 30 civil actions to the United States District Court for the
Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C.
§ 1407. *See* 391 F.Supp.2d 1377 (J.P.M.L. 2005). Since that time, 1,164 additional actions have been
transferred to the Northern District of California. With the consent of that court, all such actions have been
assigned to the Honorable Charles R. Breyer.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the
actions previously transferred to the Northern District of California and assigned to Judge Breyer.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D.
425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of
California for the reasons stated in the order of September 6, 2005, and, with the consent of that court,
assigned to the Honorable Charles R. Breyer.

This order does not become effective until it is filed in the Office of the Clerk of the United States District
Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15
days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this
15-day period, the stay will be continued until further order of the Panel.

Inasmuch as no objection is
pending at this time, the
stay is lifted.

**JAN - 3 2008**

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

SCANNED

JAN 10 2008

U.S. DISTRICT COURT MPLS

I hereby certify that the annexed
instrument is a true ... y
of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By _____
Deputy Clerk
Date 1-7-08

**IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**

MDL No. 1699

## SCHEDULE CTO-91 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**     **CASE CAPTION**

FLORIDA MIDDLE
 FLM 8  07-2011      Vincent Rosenquist, et al. v. Pfizer Inc.

MARYLAND
 MD  1  07-3130      Alex Bondarenko v. Pfizer Inc.
 MD  1  07-3131      Melvin Brown v. Pfizer Inc.
 MD  1  07-3133      Theodore Carter v. Pfizer Inc.
 MD  1  07-3134      Hobert Church, Jr. v. Pfizer Inc.
 MD  1  07-3135      Gary Cox v. Pfizer Inc.
 MD  1  07-3136      Raymond Deigert v. Pfizer Inc.
 MD  1  07-3137      Dana Johnson v. Pfizer Inc.
 MD  1  07-3138      Ruth Logan v. Pfizer Inc.
 MD  1  07-3139      Nora Manning v. Pfizer Inc.
 MD  1  07-3140      Esther Nimarko v. Pfizer Inc.
 MD  1  07-3141      Carolyn Owens v. Pfizer Inc.
 MD  1  07-3142      George Sherain, II v. Pfizer Inc.
 MD  1  07-3143      Inetta Wood v. Pfizer Inc.

MINNESOTA
 MN  0  07-4634      Vivian Cobb v. Pfizer Inc., et al.
 MN  0  07-4661      Gene Summers v. Pfizer Inc., et al.
 MN  0  07-4662      Ed Narke v. Pfizer Inc., et al.
 MN  0  07-4670      Charlotte Allen, et al., Pfizer Inc., et al.
 MN  0  07-4671      Joann Burkeen, et al. v. Pfizer Inc., et al.

MISSISSIPPI NORTHERN
 MSN 4  07-124       Claiborne Leon Collier, Sr., et al. v. Pfizer Inc., et al.

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Richard W. Wieking
Clerk

450 Golden Gate Avenue
San Francisco, CA 94102
415.522.2000

January 7th, 2008

Minnesota District Court
300 South Fourth Street
Minneapolis, MN 55415

Re:  MDL 05-1699 In re Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation

RECEIVED
BY MAIL

JAN 10 2008

CLERK US DIST COURT
MINNEAPOLIS MN

Title of Case(s)
Charlotte Allen v. Pfizer Inc.

Your Case Number(s)
C.A. No. 07-4670

Dear Clerk:

Enclosed is a certified copy of the order from the Judicial panel on Multidistrict Litigation transferring the above entitled action to the Northern District of California, San Francisco Division. The case has been assigned to the Honorable Charles R. Breyer for coordinated or consolidated pretrial processing pursuant to 28 USC §1407.

Please forward the **original record** and **a certified copy of the docket entries** in the case listed above along with the enclosed copy of this transmittal letter to:

United States District Court
Northern District of California
450 Golden Gate Avenue, P.O. Box 36060
San Francisco, CA 94102
Attn: Simone Voltz

If the case is an electronic case filing please do one of the following: 1) e-mail the PDF documents, as separate PDF files, including a PDF copy of the docket sheet to **SFmdl_clerk@cand.uscourts.gov**, 2) provide us with a temporary log in and a password to directly access your database and to expedite the downloading of the PDF files we need and/or require, or, 3) if you prefer, on a disc. We appreciate your prompt attention to this matter.

Sincerely yours,
Richard W. Wieking, Clerk

Simone Voltz

By: Simone Voltz
Deputy Clerk

Encl.

CLOSED, CV

# U.S. District Court
# U.S.District Court Minnesota (DMN)
# CIVIL DOCKET FOR CASE #: 0:07-cv-04670-MJD-SRN
# Internal Use Only

Allen et al v. Pfizer, Inc. et al                                      Date Filed: 11/20/2007
Assigned to: Judge Michael J. Davis                                    Jury Demand: Plaintiff
Referred to: Magistrate Judge Susan R. Nelson                          Nature of Suit: 365 Personal Inj. Prod. Liability
Cause: 28:1332-pip-Diversity -Personal Injury, Product Liability       Jurisdiction: Diversity

**Plaintiff**

**Charlotte Allen**                            represented by    **Elizabeth-NA L. Dudley**
                                                                 Not Admitted
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Mark-NA B. Hutton**
                                                                 Not Admitted
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Martha K Wivell**
                                                                 Attorney at Law
                                                                 PO Box 339
                                                                 Cook, MN 55723
                                                                 218-666-0250
                                                                 Email: mwivell@msn.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Elisabeth Beutler**                          represented by    **Elizabeth-NA L. Dudley**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Mark-NA B. Hutton**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Martha K Wivell**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lorraine Rowe**                              represented by    **Elizabeth-NA L. Dudley**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Mark-NA B. Hutton**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Martha K Wivell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Pfizer, Inc.** | represented by | **Erin M Verneris**<br>Faegre & Benson LLP<br>90 S 7th St Ste 2200<br>Mpls, MN 55402-3901<br>612-766-7380<br>Fax: 612-766-1600<br>Email: everneris@faegre.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Joseph M Price**<br>Faegre & Benson LLP<br>90 S 7th St Ste 2200<br>Mpls, MN 55402-3901<br>612-766-7000<br>Fax: 612-766-1600<br>Email: jprice@faegre.com<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Pharmacia Corporation** | represented by | **Erin M Verneris**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Joseph M Price**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **G.D. Searle LLC**<br>*formerly known as*<br>G.D. Searle & Co. | represented by | **Erin M Verneris**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Joseph M Price**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 11/20/2007 | 🔵1 | COMPLAINT against Pfizer, Inc., Pharmacia Corporation, G.D. Searle LLC ( Filing fee $ 350 receipt number 40017806.) assigned to Judge Michael J Davis per Master List and referred to Magistrate Judge Arthur J Boylan, filed by Lorraine Rowe, Charlotte Allen, Elisabeth Beutler. (Attachments: # 1 Exhibit A# 2 Civil Cover Sheet) (kt) Modified text on 11/26/2007 (jdf). (Entered: 11/21/2007) |
| 11/20/2007 | 🔵 | Summons Issued as to Pfizer, Inc., Pharmacia Corporation, G.D. Searle LLC. (kt) |

| | | |
|---|---|---|
| | | (Entered: 11/21/2007) |
| 11/26/2007 | �e2 | ORDER OF RECUSAL. Magistrate Judge Arthur J. Boylan recused. Case reassigned to Magistrate Judge Susan R. Nelson for all further proceedings. The new case number is 07cv4670 MJD/SRN. Signed by Magistrate Judge Arthur J. Boylan on 11/26/07. (JME) (Entered: 11/26/2007) |
| 12/10/2007 | �e3 | ANSWER to Complaint with Jury Demand by Pfizer, Inc., Pharmacia Corporation, G.D. Searle LLC. (Price, Joseph) (Entered: 12/10/2007) |
| 12/10/2007 | �e4 | RULE 7.1 DISCLOSURE STATEMENT by Pfizer, Inc., Pharmacia Corporation, G.D. Searle LLC that there is no such parent or publicly held corporation to report. (Price, Joseph) (Entered: 12/10/2007) |
| 12/10/2007 | �e5 | CERTIFICATE OF SERVICE by Pfizer, Inc., Pharmacia Corporation, G.D. Searle LLC re 3 Answer to Complaint, 4 Rule 7.1 - Disclosure Statement (Price, Joseph) (Entered: 12/10/2007) |
| 12/28/2007 | �e6 | SUMMONS Returned Executed by Lorraine Rowe, Charlotte Allen, Elisabeth Beutler. Pharmacia Corporation served on 11/21/2007, answer due 12/11/2007. (Wivell, Martha) (Entered: 12/28/2007) |
| 12/28/2007 | �e7 | SUMMONS Returned Executed by Lorraine Rowe, Charlotte Allen, Elisabeth Beutler. G.D. Searle LLC served on 11/21/2007, answer due 12/11/2007. (Wivell, Martha) (Entered: 12/28/2007) |
| 01/10/2008 | �e8 | CERTIFIED COPY OF CONDITIONAL TRANSFER ORDER (CTO -91), transferring case to the Northern District of California per MDL Panel for coordinated or consolidated pretrial proceedings. Case assigned to Judge Charles R. Breyer. (JMH) (Entered: 01/11/2008) |